IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

GENE A. BRAITHWAITE,

    Plaintiff,

v.                         CIVIL NO.: WDQ-12-3769

EDGEWOOD MANAGEMENT
    CORPORATION.,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Gene A. Braithwaite sued Edgewood Management Corporation ("Edgewood") for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),[1] § 1981 of the Civil Rights Act of 1866 ("§ 1981")[2] and Maryland law.[3] Pending is the defendant's motion to compel arbitration. ECF No. 19. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the defendant's motion will be granted.

---

[1] 42 U.S.C. §§ 2000e *et seq.*

[2] 42 U.S.C. § 1981.

[3] Md. Code Ann., State Gov't § 20-606 (West 2013)

I. Background[4]

Braithwaite is a Caucasian male previously employed by Edgewood as a maintenance technician. ECF No. 1 at 2, 6. Tanisha White, community manager, and Jeffrey Lewis, maintenance supervisor, conducted his hiring interview, during which they told Braithwaite that he would receive a raise if he performed satisfactorily in his first 90 days of employment. *See id.* at 3-4. Around the time of his hiring, Braithwaite agreed in writing that "final and binding arbitration shall be the exclusive remedy for any dispute arising out of [his] employment . . . including [his] recruitment, hire, treatment in the workplace or termination of employment." ECF No. 19-3 at 3-4. The agreement explicitly covered all statutory claims, including any claim of violations of employment discrimination laws. *See id.* at 3.

Shortly after Braithwaite was hired, White left Edgewood and was replaced by Virgil Jones. ECF No. 1 at 4. Although Braithwaite performed satisfactorily in his first 90 days on the job, Jones refused to give him a raise. *See id.* Braithwaite frequently pressed Jones about the issue but was unsuccessful in obtaining the promised raise. *See id.*

---

[4] The facts are taken from the complaint, Edgewood's motion to compel arbitration, Braithwaite's opposition, Edgewood's reply, and their supporting exhibits. ECF Nos. 1, 19, 21, 24. For purposes of resolving this motion, the facts are not in dispute.

Jones began to develop a disciplinary record for Braithwaite that would give Jones an excuse to fire him. Id. He asked Lewis "to create and or seek out and find mistakes or discrepancies with Mr. Braithwaite's work orders or assignments and issue written disciplinary action . . . as pretext to fire" him. Id. He told Lewis: "We black people have to lookout for each other[.]" Id. "Apparently, because Mr. Lewis did not do what Virgil Jones directed to be done against Mr. Braithwaite," Jones fired Lewis. Id. at 5.

After Lewis was fired, Braithwaite was subjected to several disciplinary actions "on trumped up allegations," and was assigned "substantially more work orders or assignments than his African American co-workers received." Id. On April 25, 2011, Braithwaite complained to Edgewood's corporate office about being subjected to race discrimination. Id. On May 25 and 26, 2011, Braithwaite was disciplined for "alleg[edly] falsifying a work order and leaving work without proper notification." Id. He "denied the allegations and protested the performance write ups as retaliation for his April 25, 2011 complaint." Id. On May 27, 2011, Edgewood issued a memo to Braithwaite which stated that the company found "insufficient evidence" of race discrimination or violations of Edgewood policy. Id.

On June 6, 2011, Braithwaite was fired "on the false pretext of negative and unprofessional behavior; falsifying work

3

orders, and leaving work early without proper authorization." *Id.* at 6.

Braithwaite "timely filed charges of discrimination against Edgewood . . . with the Equal Employment Opportunity Commission [("EEOC")] and or the Maryland Commission on Civil Rights ("MCCR").[5] *Id.* at 3. He received a notice of right to sue letter from the EEOC.[6] *Id.* On December 26, 2012, Braithwaite sued Edgewood for: (1) race discrimination, disparate treatment, and retaliation in violation of Title VII (counts one, two, and three); (2) unlawful employment practices in violation of Maryland law (count four); and (3) deprivation of equal rights under the law in violation of § 1981 (count five). ECF No. 1. The parties agreed to pursue mediation for 60 days before Edgewood was required to answer the complaint.[7] ECF No. 21-1 at 2-3. Edgewood subsequently decided not to mediate and, on March 7, 2013, answered the complaint. *Id.*; ECF No. 3.

On March 11, 2013, the Court entered a scheduling order. ECF No. 6. On March 22, 2013, the parties met to discuss the

---

[5] The complaint does not state when Braithwaite filed the EEOC charge.

[6] The complaint does not state when Braithwaite received this letter, but states that he filed the complaint within 90 days after receiving it. ECF No. 1 at 3.

[7] During this period, Edgewood reminded Braithwaite that he had signed an agreement to arbitrate and informed him that it would consider pursuing that option by filing a motion to compel arbitration if mediation failed. *See* ECF No. 19-3 at 1.

4

scheduling order and discovery process. ECF No. 21-1 at 3. During this meeting, Edgewood's counsel told Braithwaite's counsel that it would not "seek to compel or pursue Arbitration" of Braithwaite's claims. *Id.* On March 27, 2013, the Court granted the parties' joint motion to extend the discovery deadlines in the scheduling order. ECF No. 10.

During March and April the parties propounded interrogatories and requests for documents, to which both parties responded. ECF No. 21-1 at 3-4. Braithwaite submitted "all documents within his possession and control" and answered interrogatories inquiring about, *inter alia*, the names of those individuals with personal knowledge of the allegations in the complaint and how Edgewood allegedly discriminated against Braithwaite on the basis of his race. *Id.* at 4.

During the next few months, the parties' counsel communicated about discovery disputes, deposition scheduling, potential settlement opportunities, and engaging in mediation.[8] *See* ECF No. 21-1 at 7-12. Their communication was marked by several delays primarily because of Edgewood's change of counsel in June and the unavailability of Edgewood and its counsel at times. *Id.* at 9-11. Because of these delays, Braithwaite's

---

[8] Braithwaite contends that Edgewood twice "aggressively pushed for mediation" but abandoned the effort each time. *See* ECF No. 21-1 at 16.

5

"counsel had to postpone and reschedule several litigation actions in other cases, including a continuance of trial." *Id.* at 12.

On June 7, 2013, Braithwaite moved for leave to file an amended complaint to add new claims against Edgewood under the False Claims Act. ECF No. 12. On June 24, 2013, Edgewood opposed the motion. ECF No. 17. On July 12, 2013, Edgewood moved for an extension of time to conduct discovery, ECF No. 18, which Braithwaite opposed, ECF No. 20.[9] On July 17, 2013, Edgewood moved to compel arbitration.[10] ECF No. 19. On July 30, 2013, Braithwaite opposed the motion. ECF No. 21. On August 16, 2013, Edgewood replied. ECF No. 24.

When the motion to compel arbitration was filed, the parties had scheduled depositions but had not conducted any,[11] ECF Nos. 19-1 at 3, 21-1 at 17, and Braithwaite's counsel had "spent 352.5 hours preparing his case for summary judgment and trial" at hourly rates of $300 for one attorney and $175 for the

---

[9] On August 15, 2013, the Court granted Edgewood's motion. ECF No. 23.

[10] Between the filing of the complaint and the motion to compel arbitration, Edgewood changed counsel twice. ECF No. 21-1 at 16.

[11] Although the parties communicated about deposition scheduling before Edgewood filed the motion to compel, *see, e.g.*, ECF No. 21-1 at 10-11, "[m]ost of the depositions notices and subpoena were issued after Defendant moved to compel arbitration," ECF No. 24 at 3.

other attorney. ECF No. 21-1 at 13. Braithwaite, who has been unemployed and seeking work since Edgewood fired him, "incurred extensive costs due to the production of hundreds of pages of documents," more than "$900 of costs in issuing subpoenas," and "costs in his numerous travels to and from his residence" to his counsel's office. *Id.*

II. Analysis

   A. Legal Standard

A court may compel arbitration under the Federal Arbitration Act (the "FAA") if the parties agreed in writing to arbitrate the dispute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). The FAA reflects the strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983). Braithwaite does not dispute Edgewood's contention that he agreed in writing to arbitrate his claims. *See* ECF Nos. 19-1 at 1, 19-3 at 3-4, 21-1 at 14.

The FAA authorizes parties to demand a stay of a federal court proceeding pending exercise of a contractual right to arbitrate, unless the party moving to compel arbitration is in default of its right to arbitrate. *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (*citing Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985); 9 U.S.C. § 3 (1999)). The principle of default is similar to

waiver, but "the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." *Maxum*, 779 F.2d at 981. Doubts about the scope of arbitration "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. "The party opposing arbitration bears a 'heavy burden of proving waiver,'" and "that proof must be concrete, not merely speculative." *MicroStrategy*, 268 F.3d at 251-52 (citing *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996); *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 148 L.Ed.2d 373 (2000)).

B. Waiver

Waiver of the right to arbitrate may occur if a party "so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *MicroStrategy*, 268 F.3d at 249 (internal citations and quotations omitted). But even when the party moving to compel arbitration has engaged in pretrial litigation activity, "[t]he dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*." *Id.* (citing *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,

8

817 F.2d 250, 252 (4th Cir. 1987)) (emphasis in original). "Where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 587 (4th Cir. 2012) (*quoting Fraser*, 817 F.2d at 252) (internal quotations omitted).

Actual prejudice does not "exist simply because the opposing party expended resources before a delayed arbitration demand." *Ford Motor Credit Co. v. Roberson*, CIV. WDQ-10-1041, 2010 WL 4286077, at *4 (D. Md. Oct. 29, 2010); *Fraser*, 817 F.2d at 251-52 ("Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration."). In evaluating a claim of prejudice, "delay and the extent of the moving party's trial-oriented activity are material factors." *Wheeling Hosp.*, 683 F.3d at 587 (*citing MicroStrategy*, 268 F.3d at 249) (internal quotations omitted). Prejudice may be found when: "(1) the opposing party expended significant time and money responding to motions *filed by the moving party,* or (2) the opposing party engaged in discovery not available in arbitration or revealed trial

strategy to the moving party." *Roberson*, 2010 WL 4286077, at *4 (emphasis in original).

Braithwaite asserts that he was prejudiced by the delay between the filing of the complaint and the motion to compel, because it "caus[ed him] to reveal his trial strategy and sustain highly burdensome expenses." ECF No. 21-1 at 16. Edgewood contends that Braithwaite has failed to show actual prejudice, because he "does not contest the availability of [the] same discovery procedures in arbitration, nor does he argue that he would not have employed similar discovery tools if this matter was referred to arbitration." ECF No. 24 at 2. In support, Edgewood points to the American Arbitration Association ("AAA") rules, which would govern the arbitration. ECF Nos. 19-2 at 1, 24 at 2. The AAA rules provide that arbitrators "have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." ECF No. 19-4 at 14.

Here, seven months have lapsed between the filing of the complaint and the filing of the motion to compel arbitration. ECF No. 21-1 at 17. This length of delay, standing alone, is insufficient to create actual prejudice. *See, e.g., Wheeling Hosp.*, 683 F.3d at 587 (finding no default, in part, because a

delay of about six months was insufficient to create prejudice); *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 703-04 (4th Cir. 2012) (no actual prejudice with six and a half month delay).

Braithwaite attempts to distinguish *Wheeling Hospital* on grounds that the delay in this case "caused Plaintiff to extensively engage in extensive discovery and other trial-related activities," and, thus, is allegedly more prejudicial than it was in *Wheeling Hospital*. See ECF No. 21-1 at 17. Although the parties in *Wheeling Hospital* apparently engaged in less discovery than the parties have in this case, the plaintiffs in *Wheeling Hospital*, unlike Braithwaite, had to "respond to two dispositive motions . . . on the merits," participate in oral argument, and allegedly expend more than $250,000 in legal fees before the defendant brought its motion to compel arbitration. 683 F.3d at 583.

Other Fourth Circuit cases have granted motions to compel after the parties engaged in extensive discovery, and the parties here had not conducted any depositions when the motion was filed. *See, e.g., Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 203, 205-206 (4th Cir. 2004) (finding no default in four month delay, even though parties "exchanged written discovery, including interrogatories and requests for production of documents" and the party opposing

11

arbitration spent almost $6000 in legal fees); *Blumenthal-Kahn Elec. Ltd. v. Am. Home Assur. Co.*, 236 F. Supp. 2d 575, 579, 585-87 (E.D. Va. 2002) (finding no default in five month delay even though "discovery [was] largely completed, with the parties having exchanged documents and taken depositions of the various party representatives").[12] Finally, Braithwaite has not established that any of this "extensive" discovery would not have been conducted if the parties had proceeded to arbitration.[13] *See Blumenthal-Kahn*, 236 F. Supp. 2d at 586

---

[12] *See also Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink & Brewery Workers Union Local 812 Int'l Bhd. of Teamsters*, 242 F.3d 52, 57-58 (2d Cir. 2001) (finding no waiver, although parties engaged in "substantial discovery") (*cited in MicroStrategy*, 268 F.3d at 254).

[13] In *MicroStrategy*, the Fourth Circuit reversed the district court's holding that the defendant was in default of its right to arbitrate, even though the district court found that the defendant "obtained relevant discovery, unavailable in arbitration, on each of [the plaintiff's] claims in the current suit." *See Lauricia v. MicroStrategy Inc.*, 114 F. Supp. 2d 489, 494 (E.D. Va. 2000) *vacated sub nom. MicroStrategy*, 268 F.3d. Here, Braithwaite has not shown, or argued, that any of the discovery obtained by Edgewood would not be available in arbitration, making his case for actual prejudice weaker than the plaintiff's rejected case in *MicroStrategy*. Similarly, although Braithwaite had spent over $1000 on discovery when the motion to compel was filed, *see* ECF No. 21-1 at 13, he has not established that he would not have incurred these discovery costs during arbitration. *See Wheeling Hosp.*, 683 F.3d at 589 (finding no default, in part, because many of the litigation costs incurred by party opposing arbitration would have been "incurred irrespective of the timing or the fact of [the] motion to compel arbitration") (internal quotations omitted); *see also Rota-McLarty*, 700 F.3d at 703 ("Although incurring significant expense as a result of extended litigation can be part of actual prejudice, such cases usually involve resources expended

(finding no default, in part, because the moving party "demonstrated, without contradiction, that the discovery already undertaken in this litigation would be similar to the discovery available in the arbitration proceeding").[14] Accordingly, even though Edgewood's delay in bringing the motion caused the parties to engage in substantial discovery,[15] Braithwaite has not established actual prejudice.

Braithwaite also asserts that granting the motion to compel will prejudice him because of the extent of Edgewood's trial-oriented activity. Braithwaite argues that the discovery the parties have conducted has forced him to "reveal[] the facts of his case, documents, statements, theories of proof for each legal claim, witnesses, and what each witness will testify to." ECF No. 21-1 at 18. Edgewood contends that Braithwaite was not

---

specifically in response to motions filed by the party who later seeks arbitration.").

[14] See also MicroStrategy, 268 F.3d at 251 ("[T]he relevant question is not whether MicroStrategy would have been *entitled* to such discovery in an arbitration proceeding, but whether MicroStrategy *likely* could have obtained the same information in an arbitration proceeding[.]").

[15] Braithwaite's counsel also appears to assert that delays in the discovery process were prejudicial, because they caused him to reschedule his other cases. See ECF No. 21-1 at 12. The Fourth Circuit has held that litigation relating to claims other than those the moving party seeks to arbitrate cannot support a finding of default. See MicroStrategy, 268 F.3d at 250. Accordingly, litigation activity in *other cases* prejudiced by delays in *this* case also cannot support a finding of default.

"compelled" by discovery "to reveal . . . his 'litigation strategy,'" and, to the extent he did reveal his strategy, "such action should not penalize Defendant in seeking arbitration." ECF No. 24 at 3.

Here, in terms of litigation activity, the parties have exchanged some discovery, but, as discussed, Braithwaite has not established that this discovery would not have been available in arbitration. Thus, this discovery has not caused him actual prejudice. See MicroStrategy, 268 F.3d at 251. Also, Edgewood filed one motion to extend the time for discovery, which Braithwaite opposed.[16] See ECF Nos. 18, 20. However, this motion did not require Braithwaite to defend on the merits or reveal his trial strategy. See ECF No. 20.[17] Braithwaite has

---

[16] Edgewood also answered the complaint. ECF No. 3. However, an answer is generally considered "minimal" use of the "litigation machinery." See, e.g., Rota-McLarty, 700 F.3d at 704 (internal quotations omitted); J & S Const. Co., Inc. v. Travelers Indem. Co., 520 F.2d 809 (1st Cir. 1975) (finding no waiver when party seeking arbitration answered a complaint and participated in discovery) (cited in MicroStrategy, 268 F.3d at 251). Braithwaite also has not argued that the answer contributed to any of the allegedly prejudicial delay of which he complains.

[17] In Wheeling Hospital, the Fourth Circuit noted that it has never taken the position that filing a "dispositive motion on the merits is inherently prejudicial." 683 F.3d at 590; but see Karnette v. Wolpoff & Abramson, L.L.P., 444 F. Supp. 2d 640, 648-49 (E.D. Va. 2006) (finding default, in part, because the moving party "filed a motion to dismiss and a motion for summary judgment on the Amended Complaint," which, "if granted would be dispositive rulings on the merits"). In each case, the party opposing arbitration must show actual prejudice, regardless of the litigation activity at issue. Id. at 590-91. Here,

also filed a motion for leave to amend the complaint, which Edgewood opposed.[18] ECF Nos. 12, 17. However, motions filed by the party opposing arbitration do not support a finding of actual prejudice. *See Wheeling Hosp.*, 683 F.3d at 588 ("[W]e do not include activity that the moving party did not initiate in assessing that party's default.") (*citing Patten*, 380 F.3d at 206). Moreover, the filing of a motion to amend the complaint suggests that this litigation is still in its early stages.[19] *See Brown v. Green Tree Servs., LLC*, 585 F. Supp. 2d 770, 782

---

Braithwaite has not shown actual prejudice resulting from opposing Edgewood's non-merits motion.

[18] Braithwaite's counsel asserts that Braithwaite's litigation activity has prejudiced him, because he "has spent 291.0 hours . . . preparing his case for summary judgment and trial." ECF No. 21-1 at 19. However, as the parties had not conducted any depositions, and Braithwaite had just filed a motion for leave to amend the complaint, any preparation for the later stages of litigation was likely preliminary and presumably usable in arbitration.

[19] Braithwaite asserts that the "expenses and lost time" associated with the litigation thus far have been "highly prejudicial," because he is "unemployed and actively seeking work." ECF No. 21-1 at 20. Although unfortunate, this is not "actual prejudice" for purposes of finding a default, because Braithwaite has failed to show or argue that the discovery activity which prompted much of these expenses and lost time will not be used in arbitration. *See, e.g., MicroStrategy*, 268 F.3d at 251 ("If the same information could have been obtained in the arbitration proceeding, then [plaintiff] would have suffered no prejudice by providing the information prior to arbitration, thus precluding a finding of waiver.") (*citing Fraser*, 817 F.2d at 252 ("The dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*.")).

(D.S.C. 2008) (finding no default, because, considering that "discovery [had] not been conducted on the Amended Complaint . . . no dispositive motions" had been filed, and "the pleadings have been recently amended . . . the lawsuit has not progressed very far within the judicial system"). Finally, Braithwaite faults Edgewood's general litigation conduct, particularly the delay in some communications between counsel and Edgewood's two changes in counsel, for creating "unnecessary" prejudicial delay. See ECF No. 21-1 at 16-17, 19-20. Although Edgewood's conduct may have been annoying to Braithwaite's counsel, and at times appeared "aggressive,"[20] the prejudice caused was not "legally significant."[21] Accordingly, the second *MicroStrategy* factor, Edgewood's litigation activity, does not weigh in favor of a finding of default.

Braithwaite finally contends that Edgewood acted inconsistently with a desire to arbitrate by telling

---

[20] See ECF No. 21-1 at 16 (Edgewood "aggressively pushed for mediation").

[21] See *MicroStrategy*, 268 F.3d at 254 ("Although [plaintiff] makes a strong argument that [defendant] undertook its "remarkably aggressive" course of litigation for the sole purpose of wearing her out, both emotionally and financially, we hold only that [plaintiff] failed to carry her 'heavy burden' of establishing that she suffered legally significant prejudice from [defendant's] litigation activities.") (citing *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) ("[H]owever unjustifiable [the] conduct [of the party seeking arbitration], there can be no waiver unless that conduct has resulted in prejudice to the other party.")).

Braithwaite's counsel in March that Edgewood would not pursue arbitration. *See* ECF No. 21-1 at 15-16. Conduct that manifests "an abandonment of the arbitration forum itself can constitute waiver." *See Liberty Mut. Grp., Inc. v. Wright*, CIV.A. DKC 12-0282, 2012 WL 1446487, at *3 (D. Md. Apr. 25, 2012) (*citing Brownyard v. Md. Cas. Co.*, 868 F. Supp. 123, 127 (D.S.C. 1994)). However, in these circumstances, the party opposing arbitration must still show prejudice from the conduct to overcome the strong presumption in favor of arbitration. *See id.* Braithwaite asserts that Edgewood's counsel's statement caused him to participate in discovery, *see* ECF No. 21-1 at 15, but, as discussed, this discovery did not prejudice Braithwaite. Accordingly, Braithwaite has failed to satisfy his "heavy burden" to show that Edgewood is in default of its right to arbitrate, and Edgewood's motion to compel arbitration will be granted.[22]

---

[22] The FAA provides that, when the parties have agreed in writing to arbitrate, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. However, "dismissal, rather than a stay of trial pending arbitration, is appropriate where a court rules that all of a plaintiff's claims must be arbitrated." *See In re Titanium Dioxide Antitrust Litig.*, 86 Fed. R. Serv. 3d 674, at *12 (D. Md. 2013); *Payton v. Nordstrom, Inc.*, 462 F. Supp. 2d 706, 709 (M.D.N.C. 2006) (ordering dismissal of claims rather than a stay). Because there is no dispute that all of Braithwaite's claims are subject to arbitration, the Court will grant Edgewood's motion for dismissal of the case rather than impose a stay. *See* ECF No. 19 at 1.

III. Conclusion

For the reasons stated above, the defendant's motion to compel arbitration will be granted.

_1/6/14_
Date

_/s/_
William D. Quarles, Jr.
United States District Judge